**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | |
|---|---|
| **SAUNDRA MCNAIR**<br>2413 Wintergreen Avenue<br>District Heights, Maryland 20747<br>*Resident of Prince George's County* | <u>Jury Trial Requested</u> |
| **JO MILLER**<br>8821 Lottsford Road<br>Apt. 272<br>Largo, Maryland 20774<br>*Resident of Prince George's County* | |
| and | Collective/Class Action Claim |
| **DAWN VELTMAN**<br>405 East Ring Factory Road<br>Bel Air, Maryland 21014<br>*Resident of Harford County* | |
| Plaintiffs, | |
| ***Individually and on Behalf of All***<br>***Similarly Situated Employees*** | |
| v. | Civil Action No.: |
| **SPECIAL COUNSEL, INC.**<br>7 St. Paul Street<br>Suite 1660<br>Baltimore, MD 21202 | |
| Serve: The Corporation Trust Incorporated<br>351 West Camden Street<br>Baltimore, MD 21201 | |
| Defendant. | |

## <u>COLLECTIVE AND CLASS COMPLAINT FOR WAGES OWED</u>

SAUNDRA MCNAIR, JO MILLER and DAWN VELTMAN, Plaintiffs, by and through

their undersigned counsel and The Law Offices of Peter T. Nicholl, on behalf of themselves and

all others similarly situated, hereby submit their Complaint against SPECIAL COUNSEL, INC., Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq*. (hereinafter, "MWHL"); and unpaid wages, interest, treble damages, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq*. (hereinafter, "MWPCL"), and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

Defendant is in the business of recruiting and staffing temporary employees. Defendant provides a wide variety of legal and professional support services. Defendant has offices in twenty-three (23) states, as well as in London and Shanghai. Defendant provides short-term attorney and legal support services to its clients. Defendant commonly assigns attorneys to large scale document review projects in order to assist with the discovery process. The attorneys provide additional manpower and resources during periods when Defendant's clients are overburdened with substantial document review.

Plaintiffs are licensed attorneys. They were employed by Defendant as document review personnel. Plaintiffs were assigned to assist with multiple projects, varying in length. When one project ended, Plaintiffs would transition seamlessly to a new assignment.

Although Plaintiffs performed work for Defendant's clients, they were always under Defendant's direction. At all times, Defendant supervised Plaintiffs and other similarly situated employees. Defendant distributed and managed their assignments. The majority of Plaintiffs' assignments were completed at Defendant's offices. However, there were times when they were

directed to perform their work at the office of Defendant's clients. During these times, Plaintiffs and others similarly situated were still under Defendant's guidance. It was routine for Defendant to have an agent on-site at its clients' offices for purposes of providing direction. Said agent would act as a liaison between Defendant's clients and document review personnel in order to manage Plaintiffs' and other similarly situated employees' tasks. Plaintiffs and others similarly situated were required to follow Defendant's instructions. Plaintiffs and other document review personnel had little to no communication with the clients.

Plaintiffs' duties centered on reviewing documents. Plaintiffs and other document review personnel were responsible for collecting, identifying and analyzing documents relevant to ongoing cases. Document review is exceptionally time consuming. It often involves time-sensitive deadlines. Accordingly, Defendant employs dozens of document review personnel at a time. There were often multiple personnel members assigned to a single project. However, even with the substantial staff Defendant provided, it was still necessary for Plaintiffs and others similarly situated to work overtime. Plaintiffs' workload was heavy. There were massive quantities of discovery to review. There was always more work to be done.

As a result, Plaintiffs and others similarly situated worked overtime frequently. Plaintiffs were often encouraged to work as much as possible. It was common for Plaintiffs and others similarly situated to work as many as eighty (80) hours a week.

Defendant failed to properly compensate Plaintiffs and others similarly situated for the work they performed. Defendant refused to pay Plaintiffs and other similarly situated employees overtime wages. They were not paid at a rate of "time and a half" when they worked over forty (40) hours in a week. It was Defendant's regular practice to only pay straight time for all hours worked. This enabled Defendant to avoid the high costs associated with paying overtime to its

employees. There were a substantial number of document review personnel on Defendant's payroll. All of these personnel were cheated out of their wages.

Defendant willfully and intentionally evaded the payment of wages owed to Plaintiffs and other similarly situated employees by refusing to pay overtime. Defendant is currently engaged in this unlawful practice. This practice conflicts with the standards set forth by federal and state wage laws. Defendant's refusal to abide by these standards necessitated the filing of this Complaint. There are numerous similarly situated employees who were and continue to be subjected to Defendant's unlawful practices.

## THE PARTIES

1.     Plaintiff Saundra McNair (hereinafter, "McNair") is an adult resident of Prince George's County, Maryland.

2.     Plaintiff Jo Miller (hereinafter, "Miller") is an adult resident of Prince George's County, Maryland.

3.     Plaintiff Dawn Veltman (hereinafter, "Veltman") is an adult resident of Harford County, Maryland.

4.     Defendant Special Counsel, Inc. (hereinafter, "Defendant") is a legal staffing and recruiting company.[1] Defendant specializes in providing logistical support for its clients.

5.      Defendant's principal office is in Jacksonville, Florida.

6.     Defendant also maintains offices in Baltimore City, Maryland.

7.     Due to the nature of its business, Defendant is subject to the FLSA, MWHL and the MWPCL. Defendant's business meets the definition of a retail or service establishment.

---

[1] Hereinafter, any reference to Defendant shall include its corporate officers and all those empowered to act as agents of the corporation, either explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency. To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

8.      Due to the amount in revenues generated, Defendant is subject to the FLSA, MWHL and the MWPCL.  Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

9.      At all times relevant to this Complaint, Plaintiffs engaged in interstate commerce. This is based on the nature of the duties they performed as part of their employment with Defendant.

10.      Plaintiffs worked for Defendant who, at all times throughout Plaintiffs' employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b) and the MWPCL, § 3-501(b).

11.      At all times relevant, Plaintiffs and others similarly situated worked as non-exempt employees for Defendant.  They were all paid an hourly rate.

12.      The duties assigned to Plaintiffs and those similarly situated do not satisfy the duties tests contained within the exemptions specified in the FLSA, MWHL, or the MWPCL.

13.      Plaintiff McNair was employed by Defendant from September 21, 2015 to January 28, 2016.

14.      Plaintiff Miller was employed by Defendant for two (2) weeks in January 2015 and from April 1, 2015 to September 30, 2015.

15.      From September 21, 2015 to February 26, 2016, Plaintiff Veltman was employed by Defendant.  She worked for Defendant again from approximately August 1, 2016 to November 14, 2016.

16.      At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including those of Plaintiffs and other similarly situated employees.

17.     Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiffs and other similarly situated employees.

18.     Defendant possessed and exercised authority to determine the hours worked by Plaintiffs and others similarly situated.

19.     Defendant had the authority to control Plaintiffs' tasks and the tasks of others similarly situated.

20.     Defendant had and exercised the power and authority to change the course of Plaintiffs' and other similarly situated employees' duties.

21.     Plaintiffs and members of the putative class recognized Defendant's authority and obeyed Defendant's instructions.

22.     Defendant made all decisions relating to Plaintiffs' and other similarly situated employees' rates and methods of pay.

## JURISDICTION AND VENUE

23.     Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

24.     Discretionary supplemental jurisdiction of Plaintiffs' Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiffs' federal claims are based.

25.     Furthermore, no reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and

(iii) no exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

26.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the unlawful acts central to this matter occurred primarily within the State of Maryland.

27.     This Honorable Court has personal jurisdiction over Defendant; Defendant is incorporated under the laws of Maryland and conducts sufficient business within the forum state so as to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

28.     Defendant is a staffing and recruiting agency.  Defendant offers a wide range of professional services. Defendant's focus is placing temporary employees in legal and administrative positions.

29.     A substantial portion of Defendant's business consists of assisting its clients with reviewing paper and electronic documents.  To accomplish this, Defendant employs attorneys and other professionals to serve as document review personnel. Said personnel are primarily responsible for assisting Defendant's clients with discovery.

30.     Plaintiffs were employed by Defendant. They were hired to perform document review.

31.     Plaintiffs are all licensed attorneys. They became aware of job openings with Defendant through a variety of internet services.

32.     The interview process focused on determining Plaintiffs' experience with document review.  It was also for the purpose of ascertaining any conflicts of interest between

Plaintiffs and Defendant's clients. Once these prerequisites were met, Plaintiffs and others similarly situated were eligible to receive assignments.[2]

33.     Defendant distributed Plaintiffs' and other similarly situated employees' assignments. Plaintiffs Miller and McNair were typically informed of new assignments through listservs. Agents of Defendant's business development department usually notified Plaintiff Veltman of new projects.

34.     Although these projects were performed on behalf of Defendant's clients, Plaintiffs and others similarly situated were instructed to never represent themselves as employees of the clients. Plaintiffs and others similarly situated were instructed to always say they were employees of Defendant. Defendant's agents stressed the importance of this fact.

35.     Plaintiffs and others similarly situated typically performed their work at Defendant's Baltimore, Maryland office. Plaintiffs and other document review personnel were supervised by Defendant's agents at all times.

36.     On occasion, document review personnel were assigned to work on location. For instance, Plaintiff Miller can recall a period when she was assigned to work at the office of one of Defendant's clients. However, her duties did not change. Plaintiff Miller and other similarly situated employees were still supervised by Defendant. This supervision was implemented through Defendant's on-site project manager. These agents were directly responsible for overseeing Plaintiffs and others similarly situated. Plaintiffs and others similarly situated rarely communicated with clients directly; all communication was funneled through Defendant.

37.     Defendant's project managers tracked Plaintiffs' and other similarly situated employees' time. They gave Plaintiffs and others similarly situated their assignments. Project

---

[2] Each time Plaintiffs and others similarly situated began a new assignment, they were required to sign agreements regarding attorney-client privilege and confirm there were no conflicts of interest.

managers alone were responsible for supervising Plaintiffs' work. They always functioned as Plaintiffs' and other similarly situated employees' superiors.

38.     Regardless of whether they performed their duties at Defendant's or one of its client's offices, Plaintiffs' and other similarly situated employees' workday was the same.  Upon reporting to work, they were typically situated in a large room. From there, Defendant would distribute Plaintiffs' and other similarly situated employees' assignments.  Their assignments centered on document review.  Their day consisted of poring over vast quantities of discovery documents.  They had to assist with whatever project Defendant assigned.

39.     Each project consisted of Plaintiffs' and other similarly situated employees' review of paper and electronic documents.   The scope of their review depended on the nature of the assignment.  Defendant's project managers would guide the discovery process. This was based on the instructions provided by the clients.  Some projects required Plaintiffs and others similarly situated to provide written descriptions of the documents they reviewed.  Other projects required only routine data entry. Nevertheless, the elements remained the same.  Plaintiffs' and other similarly situated employees' work always consisted of reviewing thousands of documents.

40.     Plaintiffs and others similarly situated had no discretion in regard to their review. Their work was always performed according to Defendant's policies.

41.     Plaintiffs and other similarly situated employees had no authority to act on their own.

42.     Plaintiffs and other similarly situated employees satisfied the requirements of their position, as mandated by Defendant.

43.     Plaintiffs and other similarly situated employees adequately performed their duties to the benefit of Defendant and its clients.

44.   For the aforementioned work, Plaintiffs and others similarly situated were typically paid a flat rate of twenty-two dollars ($22.00) per hour.  They received this rate regardless of how many hours they worked each week.

45.   Their rate of pay did not increase during weeks when they worked in excess of forty (40) hours.  Plaintiffs and others similarly situated never received overtime "time and a half" pay. Their paystubs reflect this method of payment.

46.   From approximately September 21, 2015 to January 28, 2016, Plaintiff McNair was employed with Defendant.  For the entirety of the relevant period, her rate of pay was twenty-two dollars ($22.00) per hour.  She received straight time for all hours worked.

47.   For two (2) weeks in January 2015, Plaintiff Miller was employed with Defendant. She was paid the standard rate of twenty-two dollars ($22.00) per hour.  Her employment later resumed on April 1, 2015 and continued until September 30, 2015. For the majority of this period, she was paid at a rate of twenty-five dollars ($25.00) per hour.  This rate was specific to an off-site project that Miller was assigned to.

48.   From September 21, 2015 to February 26, 2016, Plaintiff Veltman was employed with Defendant.  She worked for Defendant again from August 1, 2016 to November 14, 2016. She was paid twenty-two dollars ($22.00) per hour for the entirety of her tenure.  She received this rate regardless of how many hours she worked each week.

49.   Plaintiffs and other similarly situated employees worked similar schedules.  Once they received their assignments, Plaintiffs and others similarly situated would report to work in the mornings at a time dictated by Defendant.  The time they reported depended on the demands of Defendant's clients.

50.     Plaintiffs and other similarly situated employees worked for eight (8) hours before they were given a thirty (30) minute break. They would then continue working after their breaks. This caused them to typically work a minimum of nine (9) hours a day. They often worked as many as thirteen (13) hours a day. There were times when they worked even more.

51.     Plaintiffs and others similarly situated would routinely work five (5) shifts each week. They typically worked Mondays through Fridays.

52.     Plaintiffs and other document review personnel also worked on the weekends. The demands of their employment could require them to work Saturdays and Sundays.

53.     Plaintiffs and others similarly situated consistently worked anywhere from forty-five (45) to sixty-five (65) hours a week. There were times when they worked even more. Plaintiffs can recall periods where they worked as many as eighty (80) hours a week. Their workload was always demanding. Working excessive overtime was a consistent practice.

54.     Plaintiffs and other similarly situated employees were encouraged to work as much overtime as possible. In order to complete their projects, Defendant's agents required Plaintiffs and other document review personnel to work substantial hours.

55.     Failure to work these hours could lead to termination. Defendant made this clear to Plaintiffs and others similarly situated for the duration of their employment. This policy resulted in Plaintiffs and other document review personnel regularly working over forty (40) hours a week.

56.     Some clients were uncomfortable with Plaintiffs and other similarly situated employees working overtime. This was based on the unlawfulness of Defendant's practices. Plaintiff Veltman can recall an instance when a client was not comfortable with Defendant's unwillingness to pay her overtime. Therefore, the client did not allow Veltman and other document review personnel to work over forty (40) hours. The client cited the illegality of Defendant's

refusal to pay overtime to its employees as their reason. The client made clear that it did not want to promote Defendant's unlawful practices.

57. Once this project ended, Plaintiff Veltman went on to her next assignment. Like most others, this project required that she and others similarly situated work overtime. Similar to most of her assignments, the client had no problem with the overtime that she and others similarly situated were required to work. The only concern was ensuring that the project was completed on time. The deadlines associated with the project were the basis for this concern.

58. The deadlines associated with most discovery projects has made overtime work typical in the document review industry. Working long hours is a standard practice.

59. While Defendant hired numerous document review personnel, the sheer volume of work required Plaintiffs and others similarly situated to work overtime consistently. This was the only way they could complete their assignments in a timely manner.

60. Most assignments required five (5) to twenty (20) hours of overtime each week. Working these extra hours is a typical part of the document review process.

61. Defendant was well aware of this process. Defendant knows that it is common practice for document review personnel to have to work overtime regularly.

62. Defendant also knew, or should have known, that it is common practice for document review personnel to be paid overtime wages. When Plaintiffs performed document review for similar agencies, they were compensated correctly for the overtime they worked.

63. Plaintiffs and others similarly situated were not properly compensated by Defendant. They were not paid at a rate of "time and a half" their regular hourly wage for each hour worked over forty (40) in a workweek. This occurred for the duration of their employment.

64.     There is no *bona fide* dispute that Plaintiffs and other document review personnel are owed overtime wages for all hours worked over forty (40) in a workweek.

65.     Plaintiffs and others similarly situated retained no discretion.  The duties performed by Plaintiffs and other similarly situated employees did not implicate any exemptions contained within the FLSA, MWHL, or the MWPCL.

66.     The fact that Plaintiffs and others similarly situated were all hourly employees eliminates any excuse for them to not have received overtime wages.

67.     Defendant was well aware of the overtime hours worked by Plaintiffs.  Defendant tracked Plaintiffs' and other similarly situated employees' time through various software applications.  Plaintiffs and others similarly situated routinely used these applications to document their time.

68.     For instance, Excel timesheets were frequently utilized.  Plaintiffs and others similarly situated were often required to enter their time on a shared Excel file.  The files were for the purpose of maintaining records of Plaintiffs' and other similarly situated employees' work hours.

69.     On certain projects, Defendant also made use of electronic time records.  The programs Plaintiffs and others similarly situated used for most electronic discovery projects inherently tracked time as a function of the billing system.

70.     Other time tracking programs were also utilized.  Depending on the contractual requirements of a given project, Defendant's clients often stressed the need for accurate time records. This was a part of the billing process.  To facilitate this process, Plaintiffs and others similarly situated were often asked to use a variety of time-keeping systems.

71.     Through their use of the various systems, Defendant knew that Plaintiffs and other document review personnel routinely worked over forty (40) hours each week.

72.     Defendant suffered and/or permitted Plaintiffs and others similarly situated to work these overtime hours.

73.     Defendant, acting without good faith, withheld the overtime wages owed to Plaintiffs and others similarly situated.

74.     Plaintiffs and other similarly situated employees often inquired about the overtime wages missing from their pay-checks. They made repeated complaints regarding their failure to receive these wages.

75.     The complaints were frequently made to Sam Draper (hereinafter, "Draper"), Defendant's Business Director. It was Draper's practice to simply ignore these complaints.

76.     Despite their numerous complaints, nothing was done to change the manner in which Plaintiffs and other similarly situated employees were paid. As a result, they were regularly cheated out of their wages.

77.     Other practices led Plaintiffs and other document review personnel to be cheated out of their wages. Plaintiffs and others similarly situated complained about these practices as well. Their occasional use of defective time-keeping software was one such practice.

78.     For instance, certain electronic time-keeping software frequently rounded the times Plaintiffs clocked out to the nearest fifteen (15) minute interval. As a result, at times when they may have clocked out at 7:06 p.m., their time would automatically be rounded down to 7:00 p.m. This had the effect of regularly cheating Plaintiffs out of their hours worked. Others similarly situated were also the victims of this policy. Due to the illegal time-shaving practices, they too often were often denied the wages they rightfully earned.

79.     A combination of all of Defendant's illegal practices has resulted in Plaintiffs and others similarly to be owed substantial compensation. There are numerous hours of compensable time that has yet to be paid.

80.     Consequently, on behalf of themselves and all those similarly situated, Plaintiffs seek the wages to which they are entitled and other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

81.     Plaintiffs and other similarly situated employees work or worked as document review personnel for Defendant.

82.     The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and others similarly situated with overtime wages for all hours worked over forty (40) within a workweek.

83.     Defendant knew that Plaintiffs and other similarly situated employees did not qualify for any exemption to the FLSA's overtime requirements.

84.     Defendant knew that Plaintiffs and similarly situated employees typically worked over forty (40) hours per week.

85.     Defendant suffered and/or permitted Plaintiffs and other similarly situated employees to work these overtime hours.

86.     Defendant knew or should have known that Plaintiffs and other similarly situated employees were entitled to overtime pay for all hours worked over forty (40) in a workweek.

87.     Regardless of the number of hours Plaintiffs and other similarly situated employees worked per week, they were paid "straight time" for all hours worked.

88.     Pursuant to the FLSA, Plaintiffs commence this collective action against Defendant on behalf of themselves and those similarly situated.

89.     Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rate of pay for all hours worked over forty (40) in any workweek within the applicable statute of limitations.  Plaintiffs make these same demands on behalf of all members of the putative Collective class.

90.     Plaintiffs consent to be party Plaintiffs in this matter.  Plaintiffs' consent forms are attached to this Complaint as Exhibits A-C.

91.     It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

92.     There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.  They are thereby fit for membership in the Collective class of similarly situated employees.

93.     These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

94.     Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit as members of the Collective class.

95.     Upon information and belief, other similarly situated employees will choose to join Plaintiffs in this action against Defendant and opt in to this lawsuit to recover unpaid wages and other available relief.

## CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS

96.     Plaintiffs bring this action Pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other current and former employees that served as document review personnel for Defendant and were subject to the following practices and policies:

97.     Denial of overtime wages under MWHL for hours worked over forty (40) in a single workweek; and

98.     Denial of all wages owed to Plaintiffs and other similarly situated document review personnel at the termination of their employment, in violation of the MWPCL.

99.     The classes Plaintiffs seek to represent are defined as:

*MWHL Class*

>   All individuals who are or were employed by Defendant as document review personnel for any period ranging from three (3) years prior to the filing of this Complaint to the present, who were not paid an overtime rate of time-and-a-half their regular rate for all hours worked over forty (40) in a workweek, in violation of MWHL.

*MWPCL Class*

>   All individuals who were, but are no longer, employed by Defendant as document review personnel for any period ranging from three (3) years prior to the filing of this Complaint to the present, who were paid on a salary basis and who were not paid an overtime rate of time-and-a-half their regular rate for all hours worked over forty (40) in a workweek, in violation of MWHL, and thus did not receive all wages owed to them before the termination of their employment with Defendant, in violation of the MWPCL.

100.     *Numerosity:* The individuals in the class are sufficiently numerous that joinder of all members is impracticable.  Although the precise number of such individuals is currently unknown, on information and belief, the class includes dozens of employees who are readily identifiable through Defendant's pay records.  Defendant services hundreds of customers throughout Maryland and across the United States.  At any one time, Defendant employs over one hundred (100) document review personnel across the state of Maryland alone.  Consequently, numerosity exists.

101.     *Commonality:* There are questions of law and fact common to the classes.  Among the common questions of law and fact applicable to Plaintiffs and the classes are:

i. Whether the MWHL Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime;

ii. Whether Defendant employed the MWHL Class within the meaning of MWHL;

iii. Whether Defendant violated MWHL by failing to pay Plaintiffs and the MWHL Class overtime compensation for hours worked in excess of forty (40) hours per workweek;

iv. Whether Defendant's violations of MWHL were willful;

v. Whether Defendant employed the MWPCL Class within the meaning of the MWPCL;

vi. Whether Defendant failed to provide Plaintiffs and other members of the MWPCL Class with all wages due at the time their employment ended in violation of the MWPCL;

vii. Whether Defendant's violations of MWPCL were willful; and

viii. Whether Defendant is liable for damages claimed herein, including but not limited to, compensatory, liquidated or treble, statutory, interest, costs and attorneys' fees.

102. *Typicality:* Plaintiffs' claims are typical of those of the classes. Specifically, each and every class member of both the MWHL Class and the MWPCL Class worked as document review personnel for Defendant. Each and every MWHL Class member was required to work well over forty (40) hours per workweek to keep up with Defendant's imposed schedule and regular understaffing. Each class member for both classes was paid "straight time" for all hours worked, regardless of whether the class member worked over forty (40) hours per week. Every member of the MWPCL Class failed to receive all wages owed to them at the end of their employment. As a

result, each and every class member suffered the same harm. This was due to Defendant's failure to pay a proper overtime premium for all hours worked in excess of forty (40) hours per workweek and the subsequent failure to pay Plaintiffs and other members of the MWPCL Class all wages owed to them at the conclusion of their employment. This constitutes a direct violation of MWHL, as well as a subsequent violation of the MWPCL.

103. *Adequacy:* Plaintiffs will fully and adequately protect the interests of the classes. They seek the same recovery as the classes, predicated upon the same violations of law and the same damage theory. Plaintiffs have also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the classes.

104. *Predominance:* The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one set of facts. This is based on Defendant's failure to pay overtime as required by MWHL and its subsequent failure to pay all wages due at the end of an individual's employment as required by the MWPCL. Similarly, the damages are eminently certifiable in that Defendant's records will provide the amount and frequency each class member was paid as well as the amount of time each class member worked.

105. This action is maintainable as a class action. The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes. This would establish incompatible standards of conduct for Defendant. If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a considerable drain and burden on judicial resources.

106. Accordingly, the Court should certify the proposed classes.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Against Defendant Special Counsel, Inc.*

**Count I.** *Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiffs and all Members of the Collective Class Who, During The Course of This Matter, Opt-In to the Suit by Submitting their Consent Forms to Become Party Plaintiffs*

107. Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

108. Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

109. As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

110. Defendant willfully and intentionally failed to compensate Plaintiffs properly for the overtime wages they are owed.

111. There is no *bona fide* dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

112. All members of the putative Collective are similarly situated to Plaintiffs and have suffered the same and/or similar harm resulting from the same policies and practices complained of in this Complaint.

113. Under the FLSA, Plaintiffs and all members of the Collective are entitled to additional wages from Defendant to compensate them for hours worked in a workweek in excess

of forty (40) at a rate of one and one-half (1.5) times Plaintiffs' and each member of the Collective's regular hourly wage rate.

**Count II.** ***Violation of MWHL: Failure to Pay Overtime Wages to Plaintiffs and All Members of the MWHL Class, to be Certified by Motion During the Course of This Matter.***

114. Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

115. Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate. Furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

116. Plaintiffs have not received proper compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

117. Defendant willfully and intentionally did not compensate Plaintiffs for the overtime wages they are owed. There is no *bona fide* dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

118. All members of the MWHL Class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

119. Under MWHL, Plaintiffs and members of the MWHL Class are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiffs' and each MWHL Class member's regular hourly wage rate.

**Count III.** ***Violation of the MWPCL: Failure to Pay Wages Owed at the Termination of Their Employment to Plaintiffs and to All Members of the MWPCL Class, to be Certified by Motion During the Course of This Matter.***

120. Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

121. Plaintiffs are entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501 *et seq*., which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

122. In accordance with §3-505(a), Plaintiffs have not received compensation from Defendant for all wages owed for work performed before the termination of their employment. This is specific to Defendant's failure to pay Plaintiffs the overtime wages that they are entitled to. Similarly, Defendant failed to pay the members of the MWPCL Class correctly in the same manner.

123. Defendant willfully and intentionally did not compensate Plaintiffs or the members of the MWPCL Class for the wages owed to them and continued to violate the MWPCL, even after Plaintiffs informed Defendant of the violation.

124. All members of the MWPCL Class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

125. Under the MWPCL, there is no *bona fide* dispute that Plaintiffs and the MWPCL Class are owed wages for work performed while employed by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, pray for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b) In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a Maryland state law class action on behalf of Plaintiffs and all members of the proposed classes;

c) Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses and emails of all those individuals who are similarly situated and permitting Plaintiffs to send notice of this action to all those similarly situated individuals;

d) Designating the named Plaintiffs to act as class representatives on behalf of all similarly situated employees for both the FLSA Collective class and the Maryland state law classes;

e) Judgment against Defendant for its failure to pay Plaintiffs, those similarly situated and all those appropriately joined to this matter in accordance with the standards set forth by the FLSA;

f) Judgment against Defendant for its failure to pay Plaintiffs, the members of the MWHL Class and all those appropriately joined to this matter in accordance with the standards set forth by MWHL;

g) Judgment against Defendant for its failure to pay Plaintiffs, the members of the MWPCL Class and all those appropriately joined to this matter in accordance with the standards set forth by the MWPCL;

h) Judgment against Defendant and classifying its conduct as willful and not in good faith;

i) Judgment against Defendant and classifying Plaintiffs, the Collective and the Classes as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

j) An award against Defendant for the amount of unpaid overtime wages owed to Plaintiffs, members of the Collective, members of the MWHL Class and all those appropriately joined to this matter calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' and other similarly situated employees' respective regular hourly rate for all overtime hours worked;

k) An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiffs, members of the Collective, members of the classes and all those appropriately joined to this matter, whichever is deemed just and equitable by this Honorable Court;

l) An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

m) Leave to add additional Plaintiffs to all Counts alleged herein by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

n) All further relief deemed just and equitable by this Honorable Court.

## <u>REQUEST FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

*/s/ Robert J. Leonard*
Robert J. Leonard, Esq. (07183)
rleonard@nicholllaw.com
Benjamin L. Davis, III, Esq. (29774)
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiffs*